UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIANE MARSH,

        Plaintiff,

v.                                                                                    Case No. 5:06-cv-117
                                                          Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

                                           /

**REPORT AND RECOMMENDATION**

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI).

        Plaintiff was born on June 12, 1960 and completed high school (AR 42, 58).[1] Plaintiff alleges that she has been disabled since July 2, 2002 (AR 42). She had previous employment as an assembly worker and housekeeper (AR 53). Plaintiff identified her disabling conditions as attention deficit hyperactivity disorder (ADHD), diabetes and depression (AR 52). Plaintiff stated that these conditions limit her ability to work because she cannot pay attention to things, cannot stay on her feet for a long time and she gets mad easily (AR 52). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on October 29, 2004 (AR 19-25). This decision, which was later approved by the

---

[1] Citations to the administrative record will be referenced as (AR "page #").

Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265,

3

1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). *See Brooks v. Sullivan*, No. 90-5947, 1991 WL 158744 at *2 (6th Cir. Aug. 14,1991) ("[t]o establish medical eligibility for SSI, plaintiff must show either that he was disabled when he applied for benefits . . . or that he became disabled prior to the Secretary's issuing of the final decision on this claim . . . 20 C.F.R. §§ 416.335, 416.330").

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (AR 24). Second, the ALJ found that she suffered from severe impairments of diabetes mellitus, obesity, ADHD and depression/bipolar disorder (AR 24). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 24).

The ALJ decided at the fourth step that plaintiff had a residual functional capacity (RFC) as follows:

> light work with no more than two hours per day of standing and walking; with no more than thirty minutes of standing or walking at a time; with no more than occasional climbing of ramps or stairs; with no more than occasional balancing, kneeling, stooping, crouching or crawling; with no climbing of ladders, ropes, or scaffolds. Additionally, she is limited to simple unskilled work with an SVP rating of 1 or 2 that involves only one, two or three-step instructions; that requires only minimal contact with co-workers; that involves no more than brief and superficial contact with the public; that is routine and does not require frequent significant changes or adaptations; that does not require taking initiative or making independent

>
> decisions; and that does not involve production standards or quotas or keeping pace with other employees.

(AR 24-25). The ALJ found that plaintiff could not perform any of her past relevant work (AR 25). The ALJ also found that plaintiff's allegations of regarding her limitations are not totally credible (AR 24).

At the fifth step, the ALJ determined that plaintiff had the RFC to perform a significant range of light work (AR 25). The ALJ found that there are a significant number of jobs (i.e., 25,200) in the lower peninsula of Michigan that plaintiff can perform. These jobs included the following positions involving light work: sorter/packager/collator (3,300 jobs); bench assembler (11,000 jobs), and visual inspector (4,300 jobs) (AR 22, 25). In addition, the ALJ found that plaintiff could perform the following positions involving sedentary work: sorter/packager/collator (2,600 jobs); bench assembler (3,000 jobs); and visual inspector (1,500) (AR 25). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 25).

## III. ANALYSIS

Plaintiff raised three issues on appeal.

### A. Did the ALJ base his decision on the substantial evidence of the whole record in denying disability benefits?

Plaintiff's alleged error is frivolous. Plaintiff bases her claim upon the following statement:

> With respect to Plaintiff's residual functional capacity, the ALJ determined that from September 9, 1998 through May 14, 2002, Plaintiff retained the capacity to perform "a significant range of sedentary work." (TT 23). The ALJ further concluded that "as of May 15, 2002, [Plaintiff's] impairments significantly compromise her ability to physically or mentally sustain any type of work activities on a regular basis." (TT 24).

5

Plaintiff's Brief at 19. Plaintiff's counsel has, for whatever reason, misrepresented the ALJ's findings, since these findings do not appear in the ALJ's decision. Unfortunately, plaintiff's counsel has made no attempt to explain these misleading statements in a reply brief, even though defendant pointed out in her own brief that "[t]he ALJ made no such finding, and Ms. Marsh's brief is replete with other mis-readings of the ALJ's decision." Defendant's Brief at 12.

### B. Did the ALJ err when finding the claimant lacked credibility?

Next, plaintiff contends that the ALJ made erroneous credibility findings. It is the ALJ's function to resolve conflicts in the evidence and determine issues of credibility. *See Siterlet v. Secretary of Health and Human Servs.*, 823 F. 2d 918, 920 (6th Cir. 1987) (per curiam); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). An ALJ's credibility determinations are accorded deference and not lightly discarded. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Hardaway v. Secretary of Health and Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987). An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997).

The regulations list seven factors to be used by the Commissioner in assessing the credibility of an individual's statements regarding symptoms and pain. The seven factors to be considered include: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment, other than medication, received for relief of pain or other symptoms; any measures used to relieve pain or other

symptoms; and, other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii).

As an initial matter, plaintiff appears to equate the finding of a severe impairment with the finding that a claimant suffers from a disabling condition. Plaintiff's Brief at 20. This is incorrect. The record reflects that the ALJ found that plaintiff suffered from four severe impairments, i.e., diabetes mellitus, obesity, ADHD and depression/bipolar disorder (AR 24). A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The ability to do basic work activities is defined in § 404.1521(b) as "the abilities and aptitudes necessary to do most jobs." The finding of a severe impairment does not establish disability. Rather, it is only the second step of the sequential evaluation. *See Higgs v. Bowen*, 880 F.2d 860, 862-63 (6th Cir. 1988) (the severity standard is used at the second step of the sequential evaluation as an "administrative convenience to screen out claims that are totally groundless solely from a medical standpoint") (internal quotations omitted).

Next, the ALJ concluded that "there is a paucity of objective medical evidence of record to document the existence of any medically determinable impairment that possibly could cause the severe, totally disabling symptomatology that is alleged" (AR 22). The ALJ relied upon the absence of any end organ damage resulting from plaintiff's diabetes (AR 22, 78-80). In addition, plaintiff's physician, Rebecca G. Wolfe, M.D., noted in April 2003 and May 2004 that plaintiff's diabetes was well controlled (AR 22, 212, 216). At plaintiff's visit on May 14, 2004, her physician observed that plaintiff had "excellent sensation" and "really no pain" in her feet (AR 22, 212). The

ALJ noted that plaintiff's conditions had not required any hospitalizations, nor has she been treated with surgical procedures or other aggressive methods of treatment for her symptoms (AR 23).

The ALJ also observed that when plaintiff's diabetes "was under less than adequate control," plaintiff "was not being completely compliant with her medication" (AR 23, 211). Plaintiff's compliance with her prescribed treatment is relevant to the disability determination. As a general rule, an impairment that can be remedied by treatment with reasonable effort and safety cannot support a finding of disability. *Johnson v. Secretary of Health and Human Services*, 794 F.2d 1106, 1111 (6th Cir. 1984); 20 C.F.R. § 404.1530(a) (in order to get benefits, the claimant must follow the treatment prescribed by the claimant's physician). *See, e.g., Raney v. Barnhart*, 396 F.3d 1007, 1011 (8th Cir. 2005) (diabetic claimant's non-compliance with dietary regime and medication is inconsistent with an allegation of disability).

With respect to plaintiff's mental condition, the ALJ found that although plaintiff claimed to have a history of psychological treatment, the record contained no evidence of any treatment by a mental health practitioner (AR 23). Plaintiff's diagnosis of bipolar disorder arose from a consultative examination in March 2003, and was based upon the history related to the psychologist, J. Keith Ostien, Ph. D., from plaintiff (AR 23, 149-54). Dr. Ostien concluded that plaintiff suffered from bipolar disorder, reading disorder, and ADHD, that she had a mixed prognosis, and that she was "in need of extensive psychological treatment" (AR 153). However, the ALJ noted that there was no objective evidence to confirm the severity of plaintiff's claimed symptoms (AR 23). In addition, Dr. Wolfe observed in April 2003 that plaintiff was doing "quite well," and that her ADHD and depression were stable (AR 23, 216). In November 2003, plaintiff was off of Prozac and was "feeling pretty good" (AR 214).

The Psychiatric Review Technique Form (PRTF) prepared by a non-examining DDS physician, based in part on Dr. Ostien's report, indicated that plaintiff suffered only mild moderate limitations from her mental disorders (AR 155-72). The mental RFC assessment preapred by the DDS physician found that plaintiff was moderately limited in her ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others (AR 169-70).

The ALJ also observed that plaintiff performed a variety of daily activities. Despite plaintiff's claim that she is totally unable to work, she testified at the hearing that she is able to take care of her personal needs and sometimes rakes the lawn (AR 23, 357-58).[2] Plaintiff advised Dr. Ostien that " her daily activities consist of getting up, caring for the children, cleaning the house, doing laundry, taking care of her husband, and cooking dinner" (AR 151). Plaintiff also stated in her daily activities reports that she prepares meals for herself and her family, drives the children to school, goes shopping, spends two hours per day on a number of household chores (washing laundry, vacuuming, dusting, mopping, and shoveling snow), spends time on the computer, and visits her parents a lot (AR 71-74). While plaintiff's activities may be limited, these activities are not indicative of an invalid, incapable of performing sedentary types of work. *See Pena v. Commissioner*, No. 98-1833, 1999 WL 775832 (6th Cir. Sept. 24, 1999) (claim of disabling pain belied by claimant's performance of daily activities such as preparing meals, grocery shopping, mowing lawn, taking out garbage and watching grandchildren); *Sizemore v. Secretary of Health and*

---

[2] The ALJ's decision states that plaintiff admitted at the hearing that she "sometimes mows the lawn" (AR 23). ALJ gives no citation for this statement. While plaintiff testified that she sometimes rakes the lawn, the court finds no testimony that she mows the lawn.

9

*Human Servs.*, 865 F.2d 709, 713 (6th Cir. 1988) (claimant found not disabled by severe pain when he was able to drive, do housework, visit relatives regularly, babysit occasionally, read, watch television, feed chickens and garden occasionally); *Gist v. Secretary of Health and Human Servs.*, 736 F.2d 352, 358 (6th Cir. 1984) (capacity to perform daily activities on a regular basis will militate against a finding of disability).

The ALJ also considered a letter from Dr. Wolfe's post-administrative hearing letter dated July 26, 2004 (AR 23). This letter was addressed to plaintiff's attorney and viewed by the ALJ prior to the issuance of the October 29, 2004 decision denying benefits (AR 210). Dr. Wolfe stated in the letter that "[b]ased on my most recent visit with [plaintiff] on 7/21/04, it would seem unlikely that she could engage in a substantial work activity on a regular basis, five days a week, eight hours per day for a period of twelve months or longer" (AR 210). Plaintiff apparently relies on this statement as proof of her disability and credibility. However, the ALJ determined that the statement was "not credible, reliable or controlling in anyway" (AR 23). In reaching this determination, the ALJ noted an internal contradiction in Dr. Wolfe's letter, in which the doctor also states, "[w]hether she's currently capable of holding a full-time job is not clear to me" (AR 210).

The court notes that Dr. Wolfe's office notes for July 21, 2004 do not support plaintiff's claim that she suffered from disabling symptoms. At that time, Dr. Wolfe characterized plaintiff as "hyperactive, loud, difficulty [sic] sitting still," yet also "cheerful, bright and interactive" (AR 211). Plaintiff's judgment and insight were moderately impaired (AR 211). The doctor noted that plaintiff was experiencing mood swings and being placed back on Prozac, that "she's done as well as I've ever seen her," and that there are "a lot of problems going on in her family which

10

haven't helped her" (AR 211).  While Dr. Wolfe's records indicate that plaintiff has medical challenges and needed to resume her medication, the records do not support the claim that plaintiff is totally disabled.

Even if the ALJ had found the letter as credible, he was not bound by the doctor's conclusion that plaintiff was unable to work.  *See* 20 C.F.R. § 404.1527(e)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled' ).  Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner.  *Crisp v. Secretary of Health and Human Servs.*, 790 F.2d. 450, 452 (6th Cir. 1986).  The determination of disability is the prerogative of the Commissioner, not the treating physician.  *See Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984).

Finally, plaintiff contends that her claims are credible and that she is disabled based upon her Global Assessment of Functioning (GAF) score of 49 assigned by Dr. Ostien.  The ALJ rejected this line of reasoning, pointing out that the GAF score is merely a "subjective 'snapshot' assessment of the degree of an individual's mental limitations at one particular point in time," and that the score "does not, in and of itself, provide a basis for finding that the claimant has mental limitations that are work preclusive.   The court agrees with the ALJ's decision on this issue.

The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34.  The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful

11

in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

Here, Dr. Ostien assigned plaintiff a GAF score of 49, which lies within the 41 to 50 range, which indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *DSM-IV-TR,* p. 34.

While the GAF score is evidence of Dr. Ostien's opinion of plaintiff's condition on March 3, 2004, the score does not establish disability. The Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *See Rutter v. Commissioner of Soc. Sec.*, No. 95-1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996). *See generally, Hardaway v. Secretary of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (per curiam) ("the determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence") (citation omitted); Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764-65 (Aug. 21, 2000) ("The GAF scale . . .does not have a direct correlation to the severity requirements in our mental disorders listings").

Accordingly, substantial evidence supports the ALJ's credibility determination.

**C.    Did the ALJ err in failing to ask hypothetical questions
based on the impairments and failed to accept the opinion**

12

> **of the Vocational Rehabilitation expert that, based upon the ALJ's hypothetical, and the impairments found by the treating doctor, the claimant was not employable, if found to be credible?**

Finally, plaintiff sets forth a two-sentence argument disputing the ALJ's hypothetical question posed to the vocational expert:

> Nowhere in the ALJ's hypothetical questions does he ask a question based upon all of the material records in this case. There is nothing to suggest employment impairments for uncontrolled diabetes, morbid obesity, ADHD, constant ankle swelling, severe depression or bi-polar disorder.

Plaintiff's Brief at 20.

Plaintiff's bald assertion of error contests the form and sufficiency of the ALJ's hypothetical question posed to the vocational expert (VE) at step five of the sequential evaluation. However, plaintiff presents no authority or argument to support this assertion of error. Plaintiff does not discuss the hypothetical questions posed to the VE, the VE's responses, the legal standard application to the hypothetical questions, and why the hypothetical questions posed by the ALJ were legally insufficient. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the court should deem this issue waived.

### IV. Recommendation

I respectfully recommend that the Commissioner's decision be affirmed.

Entered: July 2, 2007                    /s/ Hugh W. Brenneman, Jr.
                                         HUGH W. BRENNEMAN, JR.
                                         United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).